**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                      )
SARAH M. CARLSON,                     )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )
                                      )        Case No. 18-cv-1018 (RBW/RMM)
CENTRAL INTELLIGENCE AGENCY           )
                                      )
                    Defendant.        )
_____)


## REPORT AND RECOMMENDATION

Plaintiff Sarah Carlson, a former analyst at Defendant Central Intelligence Agency (CIA),

has filed a motion seeking attorney's fees (the "Fee Motion") for the work performed in this

litigation.[1]  *See* Pl.'s Mot. For Attorney's Fees and Costs, ECF No. 18 ("Pl.'s Mot.").  The CIA

opposes the Fee Motion, asserting that Ms. Carlson is not entitled to fees because the parties

resolved their dispute without judicial intervention.  Having considered the parties' arguments

and the applicable law, the undersigned recommends that the Court **DENY** the Fee Motion for

the reasons set forth below.

## BACKGROUND

This case arises from Ms. Carlson's request for authorization to publish documents

regarding her prior employment at the CIA.  A secrecy agreement requires that Ms. Carlson

submit such documents to the CIA for prepublication review.  *See* Compl. ¶ 3, ECF No. 1.[2]  Ms.

---

[1]    The following documents are also pertinent to the pending motion: Def.'s Mem. in Opp'n
to Pl's Mot. ("Def.'s Opp'n"), ECF 23; Pl.'s Reply, ECF No. 24.
[2]    Page citations refer to ECF header pagination, as opposed to the document's original
pagination.

Carlson wished to publish a manuscript about her experience as a CIA agent serving abroad, and between October 2015 and January 2017, she submitted multiple drafts of the manuscript to the CIA's Prepublication Review Board (PRB) for approval.  *See id.* ¶¶ 3, 5, 8.  Although the PRB had tentatively approved the publication of prior versions of the manuscript, on November 15, 2017, the PRB advised Ms. Carlson that the manuscript revealed classified information and therefore could not be published in any form.  *See id.* ¶ 13; Def.'s Opp'n at 6.  Ms. Carlson also submitted her resume to the PRB for prepublication review.  *See* Compl. ¶¶ 14, 16.  After reviewing the resume, the PRB identified specific changes that were necessary before the resume could be approved for publication.  *See id.*

Ms. Carlson initiated this lawsuit by filing a civil complaint against the CIA on May 1, 2018.  *See* Compl. at 9.  The complaint sought: (1) an injunction precluding the CIA from restraining Ms. Carlson from publishing unclassified text in her manuscript or her resume; (2) declarations that the information was unclassified and within Ms. Carlson's First Amendment rights to publish; and (3) attorney's fees and costs for the action under the Equal Access to Justice Act (EAJA).  *See id.* at 8.

On July 3, 2018, the CIA sent Ms. Carlson an email requesting an updated version of the manuscript to determine whether it could reduce the redactions.  *See* Pl.'s Mot. at 4.  In an email dated July 19, 2018, the CIA advised Ms. Carlson that it was reviewing her materials and would not require her to redact the entire manuscript — thereby reversing its prior position.  *Id.* at 4–5.  By the end of September 2018, the CIA had approved the publication of Ms. Carlson's resume without any redactions and determined that Ms. Carlson could publish her manuscript with "limited deletions required."  *Id.* at 5.

Ms. Carlson was satisfied with the CIA's change in position and agreed to dismiss her substantive claims. *See id.* at 6. The parties stipulated that the CIA did not need to answer Ms. Carlson's Complaint, and asked the Court to vacate the deadline for the answer and set a briefing schedule for a motion for attorney's fees. *See id*. at 5–6; Joint Mot. at 1, ECF No. 16.

On December 12, 2018, Ms. Carlson filed a Motion for Attorney's Fees. *See* Pl.'s Mot. On February 14, 2019, Judge Reggie Walton referred this motion to the undersigned for a Report and Recommendation. *See* Order, ECF No. 22. The motion is now fully briefed and ripe for resolution. *See* Def.'s Opp'n; Pl.'s Reply.

## LEGAL STANDARD

Parties must bear their own attorney's fees and costs unless a statute or contract explicitly authorizes fee-shifting. *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 952 (D.C. Cir. 2005). Under the EAJA, a fee-shifting statute, "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Accordingly, a party seeking attorney's fees under the EAJA must demonstrate that: (1) the claimant is a "prevailing party;"[3] (2) the government's position was not "substantially justified;" and (3) no "special circumstances make an award unjust." *Commissioner, INS v. Jean*, 496 U.S. 154, 158 (1990).

---

[3]   The EAJA defines "party" to exclude individuals with a net worth exceeding $2,000,000 and also sets net worth limits on businesses, organizations, and certain governmental units. *See* 28 U.S.C. § 2412(d)(2)(B). The CIA does not contend that Ms. Carlson has failed to satisfy those requirements.

## DISCUSSION

### I.      Ms. Carlson Is Not Eligible For Fees Because She Is Not a Prevailing Party

#### A.      *Ms. Carlson Does Not Meet the Buckhannon Definition of a Prevailing Party*

The parties dispute whether Ms. Carlson is a prevailing party who is eligible to receive attorney's fees.  Ms. Carlson contends that she is entitled to attorney's fees because her lawsuit served as a catalyst for the CIA's decision to reverse its prior position and permit Ms. Carlson to publish her resume and a redacted manuscript.  Pl.'s Mot. at 6–13.  The CIA counters that Ms. Carlson is not a prevailing party because the parties voluntarily resolved their dispute, and notes that Ms. Carlson's reliance on the catalyst theory is contrary to precedent.  Def.'s Opp'n at 13. The undersigned concurs with the CIA, and recommends that the Court find that Ms. Carlson is not a prevailing party.

To recover attorney's fees under the EAJA, Ms. Carlson must be a prevailing party.  *See* 28 U.S.C. § 2412(d)(1)(A).  A "prevailing party" is "one who has been awarded some relief by the court" after there has been a "material alternation of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health Human Res.*, 532 U.S. 598, 603– 04 (2001).  The D.C. Circuit has articulated a three-prong test to determine whether a party qualifies as a "prevailing party" under *Buckhannon*: "(1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492–93 (D.C. Cir. 2003)).  Ms. Carlson fails to meet any of these requirements because the Court has not issued an order, judgment, or other ruling that changed the parties' relationship and awarded relief to Ms. Carlson.

First, there has been no *court-ordered* change in the parties' legal relationship and no judgment in Ms. Carlson's favor.  The CIA reversed its prior position regarding the publication of Ms. Carlson's resume and manuscript, but did so without a Court order.  Once the CIA agreed to permit Ms. Carlson to publish the resume and manuscript, the parties stipulated that the CIA need not answer Ms. Carlson's complaint and sought only to litigate attorney's fees.  *See* Joint. Mot. at 1.  In response, the Court granted the parties' joint request to vacate the CIA's deadline to respond to Ms. Carlson's Complaint.  *See* Nov. 2, 2018 Minute Order.  Ms. Carlson asserts that she has secured "the equivalent of judicial relief" through the Court's acceptance of her stipulation not to further pursue challenges to remaining redactions in the manuscript "and the CIA's agreement to reverse some of its original redaction determinations."  Pl.'s Mot. at 9. However, even if Ms. Carlson had filed a notice or stipulation of dismissal (which she has not done), a "settlement, in the form of a stipulation and order of dismissal . . . d[oes] not meaningfully alter the legal relationship of the parties because its only effect [i]s to dismiss the [plaintiff's] lawsuit with a court order when no court order was needed."  *Alegria v. District of Columbia*, 391 F.3d 262, 265 (D.C. Cir. 2004) (citing *Buckhannon*, 532 U.S. at 606 and *Oil, Chem., & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 455 (D.C. Cir. 2002)).  Thus, the Court's acceptance of such a filing is "'properly viewed as a procedural ruling that cannot serve as the basis for a determination that [a party] prevailed.'"  *Bakos v. Central Intelligence Agency*, No. 18-cv-743 (RMC), 2019 WL 3752883 at *2 (D.D.C. Aug. 8, 2019) (citing *Oil, Chem., & Atomic Workers,* 288 F.3d at 458).  Here, the Court did not accept a voluntary dismissal, but simply granted the parties' motion to vacate the deadline for the CIA's answer and set a schedule for the briefing on Ms. Carlson's motion for attorney's fees.  *See* Nov. 2, 2018 Minute Order.  That did not change the parties' relationship, and does not constitute a

judgment in favor of Ms. Carlson.  Therefore, the Court's ruling did not make Ms. Carlson a prevailing party.

Second, the Court has not awarded Ms. Carlson any judicial relief.  Judicial relief requires "'some action (or cessation of action) by the defendant that the judgment produces — [such as] the payment of damages, or specific performance[,] or the termination of some conduct.'" *Thomas,* 330 F.3d at 494 (citing *Hewitt v. Helms,* 482 U.S. 755, 761 (1987)).  A settlement enforced through a consent decree may qualify as judicial relief if the Court orders a party to change its conduct.  *See Ctr. for Food Safety v. Burwell*, 126 F. Supp. 3d 114, 120–21 (D.D.C. 2015) (holding that a court-enforced consent decree that obligated the agency to finalize a proposed rule changed the legal relationship between the parties and gave the plaintiff concrete favorable relief).  The Court has awarded no such relief here, as there is neither a consent decree nor court order that requires the CIA to take or cease any action.  As a result, Ms. Carlson has not obtained judicial relief.

Ms. Carlson mistakenly attempts to analogize this case to *Green Aviation Management*, where the Court held that an order of dismissal with prejudice was a favorable judgment for the defendant who sought attorney's fees.  *See* Pl.'s Mot.  8–9; *Green Aviation Mgmt. Co., LLC v. FAA*, 676 F.3d 200, 204–05 (D.C. Cir. 2012).  In *Green*, the dismissal with prejudice meant that the defendant would not have to pay damages and that *res judicata* principles would preclude the plaintiff from re-filing the suit; therefore, under the Federal Aviation Administration regulation that the court was interpreting, the defendant would be considered a prevailing party.  *See id.* Here, the Court has not dismissed any claims, with or without prejudice.  And even if there were an order of dismissal with prejudice, that ruling would favor the CIA, not Ms. Carlson, as it would bar Ms. Carlson from further litigation of her claims against the CIA.

Ms. Carlson's assertion that she should be deemed a prevailing party because the litigation was a catalyst for the amicable resolution of this case conflicts with *Buckhannon*. *See* Pl.'s Mot. at 9. The catalyst theory posits that a plaintiff is a prevailing party if it achieves its desired result by filing a lawsuit that prompts a voluntary change in the defendant's conduct. *Buckhannan*, 532 U.S at 601. The Supreme Court has squarely rejected the catalyst theory, and concluded that a party cannot be a prevailing party if "there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 604–05. A defendant's voluntary change in conduct, even if it accomplishes what a plaintiff ultimately sought, "lacks the necessary judicial *imprimatur*" to make a party "prevail." *Id.* at 605. The policy arguments that Ms. Carlson cites do not permit the Court to disregard *Buckhannon*. *See Cactus Canyon Quarries, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 820 F.3d 12, 16 (D.C. Cir. 2016) (concern that agency secretary would vacate citations to avoid paying attorney's fees was "insufficient to prevent the application of *Buckhannon*"); *Alegria*, 391 F.3d at 267 (holding that even if catalyst theory would reduce the incentive to settle, that policy consideration was insufficient to overcome *Buckhannon*'s "powerful presumption" of what "prevailing party" means).

**B.**  **Ms. Carlson's Request for EAJA Fees Does Not Present a "Good Reason" To Depart From the Buckhannon Standard**

Perhaps recognizing that *Buckhannon* forecloses her catalyst theory arguments, Ms. Carlson also asks the Court to find that there is a "good reason" to depart from the *Buckhannon* standard based on the procedural posture and circumstances of her case. *See* Pl.'s Mot. at 8–9. The D.C. Circuit applies *Buckhannon* to review a party's eligibility for fees under all fee-shifting provisions unless there is "some good reason" for doing otherwise. *Green*, 676 F.3d at 202–03 (applying *Buckhannon* in EAJA attorney's fees dispute) (quoting *Oil, Chem., & Atomic Workers*, 288 F.3d at 455). The "good reason" exception is to ensure that the "prevailing party" language

in *Buckhannon* is consistent with the language of the fee-shifting statute's provisions under which a party seeks attorney's fees. *See Bakos*, 2019 WL 3752883 at *3 (noting that "prevailing party" is a legal term of art, and that the D.C. Circuit has analyzed statutory construction to determine whether to apply *Buckhannon* to a fee-shifting provision). Thus, the exception applies only if the relevant fee-shifting statute reveals a clear congressional intent to authorize attorney's fees in situations that would not satisfy the *Buckhannon* prevailing party test. *See Alegria*, 391 F.3d at 265 (noting that the D.C. Circuit had only once declined to apply *Buckhannon* to a fee-shifting statute, where the statute's clear legislative history indicated that Congress intended to authorize attorney's fees for legitimate lawsuits that forced defendants to abandon illegal conduct without a formal court order) (citing *Sierra Club v. EPA,* 322 F.3d 718, 713 (D.C. Cir. 2003)).

This Court need not delve into the EAJA's legislative history to reject Ms. Carlson's argument, because the D.C. Circuit already has concluded that the *Buckhannon* standard applies to fee petitions under the EAJA. *See Select Milk Producers*, 400 F.3d at 952 n. 1 (citing *Thomas*, 330 F.3d at 492 n.1); *see also Bakos*, 2019 WL 3752883 at *3 (quoting *Select Milk Producers* for proposition that *Buckhannon* standard governs EAJA fee requests). When applying the prevailing party standard to an EAJA fee petition, the D.C. Circuit stated that "[i]f the government had acted to moot this case through voluntary cessation before there was a judicially sanctioned change in the legal relationship of the parties, [the plaintiffs] would not have been 'prevailing parties.'" *Select Milk Producers*, 400 F. 3d at 949; *see also id.* at 945 ("[I]t is now clear that *Buckhannon*'s construction of 'prevailing party' also applies to fee claims arising under EAJA."). The CIA made a similar choice here, by voluntarily choosing to revisit its prepublication review decision without judicial intervention. *Select Milk Producers* is binding

precedent that precludes the Court from deeming Ms. Carlson a prevailing party under those circumstances.

**II.      The Court Need Not Determine Whether the CIA Was Substantially Justified**

Because Ms. Carlson is not a prevailing party, the Court need not reach the question of whether the CIA was substantially justified during the prepublication review process.  *See e.g. Autor v. Blank,* 128 F. Supp. 3d 331, 341 n.7 (D.D.C. 2015); *Poett v. United States*, 847 F. Supp. 2d 1, 5 (D.D.C. 2012).  Accordingly, this Report and Recommendation will not address the parties' arguments regarding that issue.

## RECOMMENDATION

Having considered the record and relevant filings, and for the reasons set forth above, the undersigned recommends that the Court **DENY** Ms. Carlson's Motion for Attorney's Fees, ECF No. 18.  Specifically, the undersigned recommends that the Court find that Ms. Carlson is not a prevailing party and that she consequently is not entitled to attorney's fees.  In turn, the undersigned further recommends that the Court decline to determine whether the CIA was substantially justified in its actions.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   August 22, 2019

                                    ROBIN M. MERIWEATHER
                                    UNITED STATES MAGISTRATE JUDGE